MIERS
vs.
BETHANY.

MIERS vs. BETHANY.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT.

The sale of the property of a minor, by his curator ad bona, when there is no ratification or concurrence of the minor, after he came of age, will be regarded as a nullity.

The plea of prescription of ten years' possession, under a just title and sale, of minors' property, will not avail, where the entire ten years have not elapsed since the minors came of full age, and before commencement of suit.

This is a petitory action. The plaintiff sues to recover a tract of land, six arpents front and forty in depth, situated on Carr's creek, in the parish of East Feliciana, which he alleges, is in the possession of the defendant, together with the original Spanish titles, and which he detains illegally, and unjustly, although amicably demanded to surrender them up. He alleges that he derives his title by purchase, evidenced by authentic act, through several persons, by a complete claim of title, from one Higgins, to whom the land was granted by the Spanish government. He prays judgment, decreeing him the possession of said titles and the

land, and that he may be declared to be the true owner
thereof.

The defendant pleaded a general denial, and alleged he was in possession by a just and legal title, and pleaded the prescription of ten years, &c.

The plaintiff offered in evidence, a Spanish order of survey, granted by Governor Gayoso, in 1798, and plat and certificate of survey by Trudeau, in 1799, of 480 arpents of land, on Carr's creek, to James Higgins. He further proved by Doctor James Raoul, that James Higgins died, and willed the tract of land, one half or 240 arpents, to his eldest son, John Higgins, and the other half, 240 arpents, to his wife, Sarah Higgins, and all his stock and personal property to his younger sons, William and James Higgins. Mr. N. Johnson, witness for plaintiff, was well acquainted with Higgins. After his death, his wife married Taylor, and had two daughters; the eldest went to look after the land, after the mother's death, which they inherited from her, and which she inherited from her husband. James Saunders knew Mary Taylor, now wife of Ursin Bourgeois, and Hannah Margaret Taylor, now wife of Wm. Blocker, both daughters of Mrs. Sarah Higgins, late wife of Taylor, by the second marriage. He knew John, William and James Higgins, half brothers of Mrs. Mary Taylor, by the mother's side; they all three died during the siege at New Orleans, in 1815.

On the 21st November, 1829, Mary Taylor, wife of Bourgeois, sold the land now in contest, being one half of the Higgins tract, containing 240 arpents, to the present plaintiff for two hundred and fifty dollars, evidenced by public act, passed before the parish judge, of the parish of St. Mary, in which the vendor declares that it is land inherited by her from her half brothers, John, William and James Higgins, deceased. This completes the plaintiff's title.

The defendant claims under the same original title. On the 3d February, 1814, Wm. Higgins and the curator *ad bona* of James Higgins, sold and conveyed by authentic act, all their interest, right and title, in and to the Higgins tract,

of four hundred and eighty arpents, to James Freeland, for four hundred dollars. On the 16th of February, 1831, Mrs. Hannah Blocker, sister of Mrs. Taylor, now wife of Bourgeois, sold and conveyed all her interest in said land, to Mathew Bethany, the defendant; and on the 9th April, 1819, James Freeland, for the consideration of two thousand five hundred dollars, sold all his interest in this land, consisting of four hundred and eighty arpents, to the defendant. Upon these issues and titles the parties went to trial.

The case was submitted to a jury, who found a verdict for the defendant. The plaintiff moved for a new trial on the following grounds.

1. That the court rejected legal and proper evidence offered by the plaintiff.

2. The verdict is contrary to the evidence in not giving the land to the plaintiff. He is at least entitled a portion, if not all the land claimed.

3. Manifest injustice has been done.

The motion for a new trial was overruled, and judgment rendered in conformity to the verdict. The plaintiff appealed.

*Turner,* for the plaintiff.

1. We claim this land under a deed from Mary Taylor. She inherited it from her mother, Sarah Higgins, and her half brothers, John, William and James Higgins, and half sister Nelly Higgins.

2. The defendent claims and opposes the right of the plaintiff under a plea of prescription and possession, under a deed from Wm. Higgins and Bohannon, the curator *ad bona* of James Higgins; and also a deed from Hannah Blocker. This comprises his title to the *locus in quo.*

3. The defendent cannot avail himself of the plea of prescription, because a portion of the title he sets up, to wit: that derived from James and Wm. Higgins, is shown to be fraudulent; and it further appears that he was not in possession ten years before the commencement of this suit, and one of the heirs, Mary Taylor, was a minor until 1823 or 1824.

4. It is not shown that Bohannon was the curator *ad bonâ*, of J. Higgins, and if it was, he had no authority to sell and convey the property of a minor.

5. The deed from Hannah Blocker, conveys no title. She was a natural child, and could not inherit, where there were legitimate children. The marriage of her mother, with Taylor, did legitimate her, because it is not shown that she was acknowledged by Taylor to be his daughter. *Louisiana Code, articles* 913, 221 *and* 224.

6. It is believed that under the Spanish law, an express acknowledgment was required to legitimate a child born before marriage. *Civil Code* 152, *articles* 31, 32, 33, 34.

7. There is another objection to the deed of Mrs. Blocker. She was a married woman, and resided out of the state; the authority of the parish judge was not given in due form, and the husband did not join in the act of sale. *Louisiana Code, articles* 124, 127, 129 *and* 1775.

*Ripley*, for the defendant.

*Bullard, J.*, delivered the opinion of the court.

The plaintiff, as vendee of Mary Taylor, sues to recover a tract of land of two hundred and forty arpents, in possession of the defendant, to which she alleges title by inheritance, from her half brothers, John, William and James Higgins, and her mother Sarah Higgins.

It appears that a tract of four hundred and eighty arpents, of which the land in dispute is a part, was granted to James Higgins. At his death, in 1800, his eldest son John inherited one-half, and the other half was retained by the widow. Parole evidence of such a distribution of the estate was received without opposition, and the present controversy relates only to the widow's half.

She had four children by her first husband, to wit: John, William, Nelly and James. She afterwards married John Taylor, by whom she had two children; Mary, Mrs. Bourgeois, and Hannah, Mrs. Blocker. It is left doubtful at

48

what time Nelly died without issue, nor is it material to inquire, because if she died before her mother, the latter became her heir; if afterwards, her full brothers inherited to the exclusion of her half sister. On the death of Sarah Higgins, the mother, in 1807, she left five children equally entitled to participate in her inheritance, viz: John, William and James Higgins, and Mary and Hannah Taylor.

The plaintiff has, therefore, shown a title in his vendor to one-fifth of the tract in dispute, by direct inheritance from Sarah Higgins, her mother, of which she does not appear ever to have divested herself.

John, William and James Higgins, the half brothers, died about the same time, in 1815; William survived his two brother, sand inherited whatever remained of their property, to the exclusion of the half sisters. On his death, the two half sisters inherited from him.

The sale of the property of a minor, by his curator *ad bona,* when there is no ratification or concurrence of the minor, after he came of age, will be regarded as a nullity. The defendant has exhibited no conveyance from John, of his share, derived from his mother. William had already sold his share to Freeland, who conveyed to the defendant. But the sale of Bohannon as curator of James, must be regarded as a nullity; neither his concurrence nor subsequent ratification is shown. We are of opinion, that the defendant has shown title to one hundred and forty-four arpents of the land in dispute; having acquired William's full share of forty-eight arpents, Mrs. Blocker's share also of forty-eight arpents, and one half of the shares of John and James, under the deed of Mrs. Blocker. The plaintiff is, therefore, as vendee of Mrs. Taylor, entitled to recover ninety-six arpents, or two undivided fifths of the land, to wit: forty-eight arpents in her own right by direct inheritance from her mother, and one-half of each of the shares of her half brothers, John and James, each twenty-four arpents.

But it is contended that Mrs. Blocker is not proved to be a legitimate child, and that consequently Mrs. Bourgeois inherited to her exclusion. It is shown that the two sisters divided between them the property left by the three Higgins in Attakapas, and we are of opinion, that the evidence does not authorise us to pronounce her incapable of inheriting,

more especially as her legitimacy is not directly questioned by the pleadings.

The plea of prescription cannot, in our opinion, avail the defendant, as it is shown that the plaintiff's vendor could not have been of age, until the year 1823 or 1824, and the present suit was instituted in 1830.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed, and it is further adjudged and decreed, that the plaintiff recover of the defendant two undivided fifths of the tract of land of two hundred and forty arpents in controversy, with costs in both courts; reserving to the defendant his right, if any he have, to be paid for improvements.